KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
PAULA L. BLIZZARD - #207920
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendants
FOXHOLLOW TECHNOLOGIES, INC. and
JOHN B. SIMPSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re FOXHOLLOW TECHNOLOGIES, INC. SECURITIES LITIGATION**<br><br>This Document Relates to ALL ACTIONS | Master File No. C-06-4595-PJH<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      January 2, 2008<br>Time:      9.00 a.m.<br>Courtroom: 3<br>Judge:     Hon. Phyllis J. Hamilton |

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

# TABLE OF CONTENTS

NOTICE OF MOTION ...........................................................................................................1

ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3)) ................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................3

    A.    General Factual Background...................................................................3

    B.    The California Derivative Lawsuit ........................................................4

    C.    Procedural History of this Securities Action .......................................4

        1.    The Consolidated Complaint ....................................................4

        2.    The Court Dismissed the Consolidated Complaint..................5

        3.    Plaintiff Files a First Amended Complaint that is Substantively Identical to the Dismissed Consolidated Complaint. .................6

III.  ARGUMENT .........................................................................................................9

    A.    The First Amended Complaint Does Not Adequately Plead False or Misleading Statements or Omissions..........................................................9

        1.    FoxHollow's Pre-Class Period Statements Did Not Create a Duty to Disclose Simpson's Alleged "Edict" to Management. .................10

        2.    Plaintiff Identifies No Actionable Statements or Omissions. ...................14

    B.    The  First Amended Complaint Still Does Not State a Securities Cause of Action. ......................................................................................................17

    C.    The First Amended Complaint Still Does Not Adequately Plead Scienter. :.......................................................................................................18

        1.    The Factual Allegations in the First Amended Complaint are Inadequate. ................................................................................19

        2.    The Court Should Infer a Lack of Scienter from the Fact that Defendants Retained the Vast Majority of their FoxHollow Shares During the Class Period.................................................21

    D.    The First Amended Complaint Must Be Dismissed With Prejudice Because Any Further Amendments Would Be Futile.............................22

IV.   CONCLUSION.....................................................................................................23

i

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re American Bus. Finance Services, Inc. Securities Litigation,*
413 F. Supp. 2d 378 (E.D. Pa. 2005) ..................................................15

*In re Business Objects S.A. Securities Litigation,*
2005 WL. 1787860 (N. D. Cal., July 27, 2005) ..................................20

*Brody v. Transitional Hospitals Corp.,*
280 F.3d 997 (9th Cir. 2002) ...........................................................10

*Falkowski v. Imation Corp.,*
309 F.3d 1123 (9th Cir. 2002) ....................................................10, 16

*In re GlenFed, Inc. Securities Litigation,*
42 F.3d 1541 (9th Cir. 1994) ...........................................................10

*In re Gupta Corp. Securities Litigation,*
900 F. Supp. 1217 (N.D. Cal. 1994) ..................................................12

*Harris v. Ivax Corp.,*
182 F.3d 799 (11th Cir. 1999) ..........................................................12

*Klamath-Lake Pharm. Association v. Klamath Medical Serv. Bureau,*
701 F.2d 1276 (9th Cir. 1983) ..........................................................23

*Klein v. General Nutrition Cos., Inc.,*
186 F.3d 338 (3d Cir. 1999) .............................................................15

*Lee v. County of Los Angeles,*
240 F.3d 754 (9th Cir. 2001) ..............................................................3

*In re Merck & Co., Inc. Securities Litigation,*
432 F.3d 261 (3rd Cir. 2005) ...........................................................11

*Naye v. Boyd,*
No. C83-771R, 1986 WL. 198 (W.D. Wash. Oct. 20, 1986) ..............18

*New Jersey v. Sprint Corp.,*
Case No. 03-2071-JWL, 2004 U.S. Dist. LEXIS 17765 (D. Kan. Sept. 3, 2004) ........................13

*In re Netflix, Inc. Securities Litigation,*
No. C 04-2978 FMS, 2005 WL. 1562858 (N.D. Cal. June 28, 2005) ..........................20

*In re Northpoint Communications Group, Inc. Securities Litigation,*
184 F. Supp. 2d 991 (N.D. Cal. 2001) ...............................................20

*Osher v. JNI Corp.,*
302 F. Supp. 2d 1145 (S.D. Cal. 2003) ..............................................22

*In re Pacific Gateway Exch., Inc. Securities Litigation,*
No. C-001211 PJH, 2002 WL 851066 (N.D. Cal. Apr. 30, 2002) .................................10

ii

404972.03

*Panter v. Marshall Field & Co.,*
646 F.2d 271 (7th Cir. 1981) .................................................................18

*Rubke v. Capitol Bancorp,*
No. C 05-4800 PJH, 2006 WL 1699569 (N.D.Cal. June 16, 2006) ...............................17, 19, 22

*Santa Fe Indus., Inc. v. Green,*
430 U.S. 462 (1977)...................................................................6, 9, 17

*In re Silicon Graphics,Inc. Secs. Litig.,*
183 F.3d 970 (9th Cir. 1999) ..............................................................19, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
_ U.S. _, 127 S. Ct. 2499 (2007).........................................................19, 22

*In re VeriFone Securities Litigation,*
784 F. Supp. 1471 (N.D. Cal. 1992) .......................................................12

*Weill v. Dominion Resources, Inc.,*
875 F. Supp. 331 (E.D. Va. 1994) .........................................................18

*Wietschner v. Monterey Pasta Co.,*
294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...................................................22

**STATE CASES**

*Beam v. Stewart,*
845 A.2d 1040 (Del. 2004) .................................................................21

**FEDERAL STATUTES**

15 U.S.C. § 77z-2.............................................................................12

15 U.S.C. §78u-4(b)(1) ......................................................................10

15 U.S.C. § 78u-4(b)(2) .................................................................2, 9, 19

15 U.S.C. § 78u-5.............................................................................12

17 C.F.R. § 229.402 (2005) ................................................................13

17 C.F.R. § 229.402 (a)(9)(b) (2005)......................................................13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 2, 2008, at 9:00 a.m. before the Honorable Phyllis J. Hamilton, United States District Court, San Francisco, California, Defendants FoxHollow Technologies, Inc. and John B. Simpson ("Defendants") will, and hereby do, move the Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 et seq., and Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint for Violations of Federal Securities Laws ("First Amended Complaint" or "First Am. Compl.").

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Request for Judicial Notice, the Declaration of Paula L. Blizzard together with accompanying exhibits, all pleadings and papers on file herein, oral argument of counsel, and any other matter that may be submitted at the hearing.

**ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

1.      Has Plaintiff alleged with sufficient particularity that Defendants made false or misleading statements or omissions?

2.      Has Plaintiff alleged facts that state a claim for more than corporate mismanagement or self-dealing?

3.      Has Plaintiff alleged with particularity facts giving rise to a strong inference that each Defendant acted with scienter?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

At the hearing of September 5, 2007, this Court dismissed the Consolidated Complaint in strong terms finding it "deficient on both scienter and falsity." Tr. 24:24-25 (attached as Blizzard Decl., Ex. L). Despite being on notice of the Court's concerns, Plaintiff has filed a First Amended Complaint that offers nothing to fix these defects. Once again, Plaintiff fails to allege any misleading statements or omissions. Similarly, Plaintiff provides no substantive additional allegations regarding scienter. Accordingly, the First Amended Complaint should be dismissed.

1

404972.03

1    Plaintiff continues to present the same flawed theory.  Plaintiff alleges that Defendant

2    FoxHollow Technologies, Inc. ("FoxHollow") misled investors by failing to disclose that

3    FoxHollow's then chairman, Defendant John B. Simpson, issued an "edict" threatening to fire

4    senior management unless they supported an acquisition of Lumend, Inc.  At the September 5,

5    2007 hearing, the Court expressed "real doubts that [Plaintiffs] are ever going to be able to plead

6    that theory" noting that it would mean "every publicly held corporation would have to disclose

7    when they are going to fire somebody before they fire somebody." Tr. 15:12-15; 24:2-3.

8    The First Amended Complaint confirms the Court's doubts.  Plaintiff alleges no new

9    facts showing that FoxHollow had a duty to disclose Simpson's alleged threat to fire senior

10   management.  Rather, Plaintiff still relies on highly general public statements about the value and

11   importance of FoxHollow's workforce.  These generic statements did not create a duty to

12   disclose that any particular employee might depart the company; indeed, they highlighted the

13   fact that FoxHollow's employees were employed at will and were free to leave the company at

14   any time.  Accordingly, Plaintiff does not allege facts showing FoxHollow misled investors by

15   failing to disclose Simpson's alleged "edict."  As Plaintiff still fails to identify any misleading

16   statements or omissions, his complaint must be dismissed.

17   Plaintiff also fails to adequately allege scienter.  Under the PSLRA, Plaintiff must "state

18   with particularity facts giving rise to a *strong inference*" that Defendants acted with deliberate or

19   conscious recklessness with respect to the accuracy of the allegedly misleading statements.  15

20   U.S.C. § 78u-4(b)(2) (emphasis added).  The First Amended Complaint adds no new allegations

21   giving rise to a strong inference of scienter and must therefore be dismissed for the same reasons

22   as the Consolidated Complaint.

23   As Plaintiff was already on notice of the Court's concerns and has failed to adequately

24   address them, it is clear that any further amendments would be futile.  Accordingly, the Court

25   should dismiss Plaintiff's First Amended Complaint with prejudice.

26

27

28

2

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   General Factual Background[1]**

Defendant FoxHollow Technologies, Inc. is a wholly owned subsidiary of eV3, Inc., with its headquarters and principal place of business in Redwood City, California.  Named as a Defendant with FoxHollow is Dr. John Simpson, FoxHollow's founder and current Chief Executive Officer.  First Am. Compl. ¶¶ 23-24.[2]  This case relates to the departure of some of FoxHollow's executives in December 2005 and January 2006.

FoxHollow is an industry leader in the study and treatment of Peripheral Arterial Disease.  *See id.* ¶ 35.  After receiving FDA approval for its plaque excision device, the SilverHawk, in June 2003, the company went public in October 2004.  *Id.* ¶¶ 43-46.  FoxHollow's revenue grew rapidly after the FDA approved the SiverHawk and continued to grow rapidly after the company went public.  *See id.* ¶¶ 47-50.  The company's stock price grew from an initial price of $14.00 per share to a high of $55.20 on July 28, 2005.  *Id.* ¶¶ 46, 62.

After going public, FoxHollow made regular filings with the SEC.  These filings reported earnings and executive compensation.  *See id.* ¶¶ 47-50, 52-56, 59-60, 63.  Plaintiff does not allege that any of these earnings or compensation reports were inaccurate.  In some of its SEC filings, FoxHollow noted, in very general terms, that its success depended on the efforts of its employees.  *See id.* ¶¶ 49, 52.  The company acknowledged that it might "not be able to meet our future hiring needs or retain existing personnel" and that "[t]he announcement of the loss of one of our key employees could negatively affect our stock price."  *Id.* ¶ 52.

On December 12, 2005, FoxHollow announced that its CEO Robert W. Thomas was retiring after nearly eight years with the company.  *Id.* ¶ 80.  FoxHollow announced that Simpson, who was then Chairman of FoxHollow's Board of Directors, would serve as interim CEO and that it had hired an executive search firm to assist in its search for a new CEO.  *Id.*  FoxHollow

---

[1] For the purposes of this Motion only, Defendants, as they must, takes the allegations of the First Amended Complaint as true.  *Lee v. County of Los Angeles,* 240 F.3d 754, 764 (9th Cir. 2001).

[2] The First Amended Complaint drops Plaintiff's allegations against former individual defendant Matthew Ferguson.

1    also announced that it was creating a four-person leadership committee, consisting of Chief

2    Financial Officer Matthew Ferguson, Chief Operating Officer David Martin, Vice President of

3    Corporate Development and Investor Relations Douglas Rohlen, and Senior Vice President of

4    Operations and Research & Development Ronald Steckel. *See id.* As anticipated by

5    FoxHollow's public disclosures, the price of FoxHollow's stock declined by approximately $7,

6    to $38.97 a share on the day after the announcement of Thomas's departure. *Id.* ¶ 87.

7        In January 2006, FoxHollow replaced its Chief Operating Officer David Martin with

8    Ronald Steckel. *See id.* ¶ 94. At the same time FoxHollow named Ronald Zimmer to replace

9    William Hoffman as the company's Vice President of Sales. *See id.* After FoxHollow's

10   announcement, the company's share price fell by $1.90. *See id.* ¶ 96.

11   **B.    The California Derivative Lawsuit**

12       Six months later, on July 21, 2006, a FoxHollow shareholder filed a derivative action

13   against the company's officers and directors in the California Superior Court for San Mateo

14   County, raising allegations similar to those later alleged by Plaintiff in this action. See Blizzard

15   Decl., Ex. J (Complaint for Derivative Claims). On February 2, 2007, Defendants filed a

16   demurrer to the derivative complaint. On May 31, 2007, the Superior Court sustained

17   Defendants' demurrer and dismissed the complaint with leave to amend. See Blizzard Decl., Ex.

18   K (Order Denying Request for Judicial Notice and Sustaining Demurrer). The court found that

19   Plaintiff had failed to meet "his burden to set forth specific facts which create a reasonable doubt

20   that as of the time the complaint is filed the board of directors could not have properly exercised

21   its independent and disinterested judgment in responding to a demand." *Id.* Plaintiff in the

22   derivative action is yet to file an amended complaint.

23   **C.    Procedural History of this Securities Action**

24       **1.    The Consolidated Complaint**

25       On December 15, 2006, two lead Plaintiffs filed the Consolidated Complaint that defined

26   a class period of May 13, 2005 through January 26, 2006. Cons. Compl. ¶ 24. Like the state

27   court derivative action, the Consolidated Complaint alleged that Simpson ordered FoxHollow's

28   senior management to use the Company's assets to acquire Lumend for his personal benefit and

4

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

1  that Simpson "purged" FoxHollow's management when they did not do so. *Id.* ¶¶ 6-7.

2  However, the Consolidated Complaint did not specify when Simpson was alleged to have

3  ordered the senior management of FoxHollow to acquire Lumend. *See id.* ¶ 60.

4  　　　In Part V(C) of the Consolidated Complaint, Plaintiffs alleged a number of purportedly

5  "false and misleading statements." *Id.* ¶¶ 48-61.  These statements consisted mostly of routine

6  Form 8-K and 10-Q filings.  *See id.*  Included among these were some very general remarks

7  about the importance of FoxHollow's employees to its success. *See id.* ¶ 48.  In support of

8  scienter, Plaintiffs provided non-substantive boilerplate allegations. *See id.* ¶¶ 76-78.

9  　　　Plaintiffs contended that, in light of these general statements regarding the importance of

10  FoxHollow's workforce, the failure to disclose internal disharmony constituted a federal

11  securities claim.  Thus, instead of alleging that Simpson's purported "edict" regarding Lumend

12  was a breach of fiduciary duty or corporate waste, the Consolidated Complaint alleged that the

13  failure to disclose was an omission of a material fact in violation of Section 10(b) of the 1934

14  Act and Rule 10b-5. *See id.* ¶¶ 79-85.  Plaintiffs also alleged controlling person liability under

15  Section 20(a). *Id.* ¶¶ 86-89.

16  　　　**2.　　The Court Dismissed the Consolidated Complaint.**

17  　　　On February 13, 2007, Defendants filed a Motion to Dismiss the Consolidated

18  Complaint, arguing that: (1) Plaintiffs had not alleged facts that stated a claim for more than

19  corporate mismanagement; (2) had not alleged any false or misleading statements; (3) had not

20  alleged with particularity facts giving rise to a strong inference that each Defendant acted with

21  scienter; and (4) had not stated a claim for "controlling person" liability against the individual

22  defendants. *See* Defs.' Mot. to Dismiss (Docket No. 28).  After full briefing by the parties, the

23  Court heard oral argument on September 5, 2007.

24  　　　At the hearing, the Court stated that, as Plaintiffs had not identified any false or

25  misleading statements, it "certainly cannot conclude that they are, indeed, false and/or

26  misleading in character." Tr. 5:21-24.  In response, Plaintiffs stated that they were not relying on

27  false statements, claiming instead that they were bringing "an omissions case." Tr. 10:1-3.

28  Plaintiffs argued that FoxHollow had a "duty" to disclose that Simpson intended to fire senior

404972.03

1   management. Tr. 8:17-20.  According to Plaintiffs, this duty arose because FoxHollow had

2   stated, without naming any specific employee, that it valued its employees and that these

3   employees were responsible for the company's good performance. Tr. 15:12-25.  Plaintiffs

4   argued that, having made these statements, FoxHollow misled investors when it later omitted

5   information about Simpson's "edict" from its public statements.  The Court expressed concern

6   that, under this theory, "every publicly held corporation would have to disclose when they are

7   going to fire somebody before they fire somebody." Tr. 15:12-15.  The Court expressed "real

8   doubts that [Plaintiffs] are ever going to be able to plead that theory." Tr. 24:2-3.

9          The Court also found the Consolidated Complaint deficient on scienter. Tr. 24:13-25.

10  The Court noted that "nothing in the chronology" supported Plaintiffs' theory. Tr. 4:9-10.

11  Moreover, "there is nothing [in the Complaint] to suggest who fired the top executives, whether,

12  indeed, they were fired." Tr. 4:20-21.  Similarly, the complaint provided no information about

13  the timing of Simpson's alleged "edict" to management and did not indicate how Simpson, as

14  Chairman of the Board, could have fired all the top executives on his own. Tr. 4:9-17.  Given

15  the Consolidated Complaint's marked lack of detail, the Court found it deficient on scienter with

16  respect to all defendants. Tr. 13-25.  The Court also stated that, although it "hadn't quite decided

17  the overarching question," the complaint might also fall within *Santa Fe Industries, Inc. v.*

18  *Green*, 430 U.S. 462 (1977), for failing to allege more than internal mismanagement. Tr. 25:1-4.

19         On September 10, 2007, the Court entered an order dismissing the Consolidated

20  Complaint "for the reasons stated at the hearing on September 5, 2007." Order Granting Defs.'

21  Mot. to Dismiss Cons. Compl. at 2 (Docket No. 54).  The Court granted Plaintiffs leave to file a

22  First Amended Complaint.

23      **3.    Plaintiff Files a First Amended Complaint that is Substantively Identical to
               the Dismissed Consolidated Complaint.**

24

25      Lead Plaintiff Matthew Roberts filed a First Amended Complaint on October 19, 2007.

26  The First Amended Complaint defines a shorter class period of August 28, 2005 through January

27  26, 2006.[3]  First Am. Compl. ¶ 29.  In substance, however, the First Amended Complaint differs

28  ─────────────────────
    [3] Presumably, former Lead Plaintiff Margaret Kovarik has withdrawn from the action because

                                          6

404972.03

1    very little, if at all, from the Consolidated Complaint.  Plaintiff lays out his theory of the case at

2    paragraph 17: "Given their prior disclosures, FoxHollow had a duty to disclose material

3    information about Simpson's decision, approved by the Board, to acquire Lumend and to

4    terminate any executives who refused to go along with that decision."  This is precisely the

5    theory that the Court has already rejected.

6           Although mostly identical to the Consolidated Complaint, the First Amended Complaint

7    no longer alleges that the Lumend deal was an improper attempt to "loot" FoxHollow's assets,

8    removing any alleged financial motive by Simpson.  The Consolidated Complaint alleged that,

9    "the cost of acquiring Lumend was far above its market value, essentially constituting a gift to

10   Simpson" and "was designed solely to benefit Simpson and his friends and family."  Cons.

11   Compl. ¶¶ 6-7.  Furthermore, the Consolidated Complaint alleged that Simpson was "forced to

12   sell Lumend at a lower price."  Cons. Compl. ¶ 61.  Notably, these allegations have been

13   removed from the First Amended Complaint.  The First Amended Complaint now portrays the

14   dispute over the Lumend deal as nothing more than a disagreement over corporate strategy.  *See*

15   First Am. Compl. ¶ 9 ("Martin (COO), Hoffman (VP Sales) and Leslie Trigg (VP Marketing) –

16   informed Simpson and Thomas that an acquisition made no sense to FoxHollow, involved

17   inferior technology, and would only get in the way of its already successful business model.");

18   *see also id.* ¶¶ 65-66.  Removing Simpson's alleged improper financial motivation, the First

19   Amended Complaint offers nothing in its place, other than that Simpson believed FoxHollow

20   should acquire Lumend.

21          Unlike the Consolidated Complaint, the First Amended Complaint provides a date for

22   Simpson's alleged "edict" regarding the Lumend deal.  Plaintiff now alleges that, on August 28,

23   2005, Simpson told Thomas that the Lumend acquisition must be closed "by the end of the

24   week" and "executive team members would be asked to resign if they refused to go along."  *Id.* ¶

25   72.  Citing three anonymous "Executive Employee Witnesses," Plaintiff includes some new

26

27   she bought her only shares of FoxHollow on July 1, 2005, outside of the amended class period.
     *See* Certification of Named Plaintiff, attached to Complaint for Violations of Federal Securities

28   Laws (Docket No. 1).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1   allegations of internal management discord, though Plaintiff fails to specify when most of these

2   events occurred. *See id.* ¶¶ 67-71.

3       At paragraphs 47-63, the First Amended Complaint alleges a number of pre-class period

4   statements. Most of these statements were also alleged in the Consolidated Complaint.

5   *Compare* First Am. Compl. ¶¶ 47-63 with Cons. Compl. ¶¶ 42-55.[4] Plaintiff only alleges two

6   new statements from this pre-class period. These are two Earnings Conference Calls in which,

7   without mentioning any employee by name, CEO Robert Thomas made some highly general

8   remarks praising FoxHollow's workforce. *See* First Am. Compl. ¶¶ 51, 61; Blizzard Decl. Exs.

9   F & G (earnings call transcripts).

10      The First Amended Complaint cites some additional details regarding FoxHollow's "May

11  16, 2005 [sic]" Proxy statement. First Am. Compl. ¶¶ 53-56. As FoxHollow did not file a proxy

12  statement on that date, Defendants can only presume that Plaintiff intends to refer to the proxy

13  statement of April 29, 2005 that was referenced in paragraph 47 of the Consolidated Complaint.

14  The First Amended Complaint cites FoxHollow's "overall executive compensation philosophy"

15  to "attract and retain executives who are critical to FoxHollow's long-term success." First Am.

16  Compl. ¶¶ 55-56. The First Amended Complaint notes that FoxHollow's executive

17  compensation included "*potential* long-term compensation through stock options" as "an

18  incentive for future performance." *Id.* ¶ 54 (emphasis added).

19      The Consolidated Complaint contained a section titled "False and Misleading

20  Statements." *See* Cons. Compl. ¶¶ 48-61. In contrast, with only two exceptions, the First

21  Amended Complaint does not specifically identify any statements as false or misleading. *See*

22  First Am. Compl. ¶ 81 (alleging that a December 12, 2005, Form 8-K and press release "were

23  materially misleading").

24      Finally, the First Amended Complaint contains purported "Additional Scienter

25  Allegations." First Am. Compl. ¶¶ 103-05. These boilerplate allegations are identical *word-for-*

26

---

27  [4] *Compare* First Am. Compl. ¶ 47 with Cons. Compl. ¶ 42; ¶ 48 with ¶ 43; ¶ 49 with ¶ 44; ¶ 50

28  with ¶ 46; ¶ 52 with ¶ 48; ¶¶ 53-56 with ¶ 47; ¶ 57 with ¶ 50; ¶ 58 with ¶ 51; ¶ 59 with ¶ 52; ¶ 60 with ¶ 53; ¶ 62 with ¶ 54; and ¶ 63 with ¶ 55.

404972.03

1    *word* to the scienter allegations already found inadequate in the Consolidated Complaint.

2    *Compare* Cons. Compl. ¶¶ 76-78.

3                      **III.**     **ARGUMENT**

4        Plaintiff's First Amended Complaint offers nothing new and fails for all the same reasons

5    as the Consolidated Complaint.  The First Amended Complaint fails to state a cause of action

6    under Section 10(b) of the 1934 Act as amended by PSLRA or Rule 10b-5 for three reasons.

7    First, and perhaps most glaringly, Plaintiff has failed to allege with the specificity required by the

8    PSLRA any false or misleading statements or omissions.  Second, Plaintiff has—at best—stated

9    a claim for mismanagement or breach of fiduciary duty, not a federal securities cause of action.

10   *Santa Fe Indus.*, 430 U.S. at 479.  Finally, Plaintiff fails to "state with particularity facts giving

11   rise to a strong inference that the defendant[s] acted" intentionally or with deliberate recklessness

12   in failing to disclose the alleged Simpson "edict" and threat, as required by the PSLRA.  15

13   U.S.C. § 78u-4(b)(2).  As Plaintiff was already on notice that he needed to cure these defects in

14   his complaint, the Court should dismiss the First Amended Complaint with prejudice.

15   **A.**     **The First Amended Complaint Does Not Adequately Plead False or Misleading Statements or Omissions.**

16

17        At the hearing of September 5, 2007, Plaintiff explained that he was alleging omissions

    rather than false statements.  *See* Tr. 10:1-3.  Plaintiff claimed that FoxHollow misled investors

18

    by failing to disclose Simpson's "edict" to management.  *See* Tr. 10:1-13.  The First Amended

19

    Complaint presents the same flawed "failure to disclose" theory.  First Am. Compl. ¶ 107 ("By

20

    failing to disclose Simpson's edict to management to acquire Lumend or be replaced . . .

21

    defendants disseminated and [sic] misleading statements while concealing and omitting material

22

    facts which they had a duty to disclose.").  Accordingly, the First Amended Complaint fails for

23

    the same reasons as the Consolidated Complaint.

24

       Under the PSLRA, actions based on allegations of material misstatements or omissions

25

    must "specify each statement alleged to have been misleading, the reason or reasons why the

26

    statement is misleading, and, if an allegation regarding the statement or omission is made on

27

    information and belief, the complaint shall state with particularity all facts on which that belief is

28

404972.03

1    formed." 15 U.S.C. §78u-4(b)(1).  "[V]ague claims about what statements were false or

2    misleading [and] how they were false" are grounds for dismissal.  *Falkowski v. Imation Corp.*,

3    309 F.3d 1123, 1133 (9th Cir. 2002).  Furthermore, Plaintiffs must specify "why the disputed

4    statement[s] [were] untrue or misleading *when made.*"  *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d

5    1541, 1549 (9th Cir. 1994) (en banc); *In re Pacific Gateway Exch., Inc. Secs. Litig.*, No. C-

6    001211 PJH, 2002 WL 851066, *17 (N.D. Cal. Apr. 30, 2002) (Hamilton, J.) (dismissing

7    complaint because plaintiffs failed to plead sufficient "contemporaneous facts" that would have

8    made statements misleading).

9         Plaintiff fails to satisfy these requirements.  Plaintiff does not specify which statements

10   are alleged to be misleading.  This alone is sufficient for dismissal of the complaint.  Further,

11   Plaintiff offers only vague claims about why FoxHollow's failure to disclose Simpson's "edict"

12   was misleading.  Plaintiff's vague theory is that FoxHollow's pre-class period statements created

13   a "duty" to disclose Simpson's edict.  *See* First Am. Compl. ¶ 72 ("Given the public's perception

14   about the state of affairs at FoxHollow [on August 28, 2005], defendants had a *duty* to disclose

15   [Simpson's edict].") (emphasis added).  This theory fails.

16   **1.    FoxHollow's Pre-Class Period Statements Did Not Create a Duty to Disclose
             Simpson's Alleged "Edict" to Management.**

17

18        Plaintiff's theory fails for two reasons.  First, the theory relies on a fundamentally

     mistaken premise about the securities laws.  Plaintiff assumes that the securities laws impose an
19
     ongoing duty to make disclosures complete and accurate.  The Ninth Circuit, however, has
20
     *explicitly rejected* this theory.  In *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th
21
     Cir. 2002), the plaintiffs argued that "in order for a statement not to be misleading, once a
22
     disclosure is made, there is a duty to make it complete and accurate."  The Ninth Circuit wrote
23
     that "[t]his proposition has no support in the case law" and held that the securities laws
24
     "prohibit[s] *only* misleading and untrue statements, not statements that are incomplete."  *Id.* at
25
     1006.  Accordingly, FoxHollow's pre-class period statements did not create a *duty* for
26
     FoxHollow to report any subsequent management discord or disharmony.
27

28

                                                  10

404972.03

1    FoxHollow's pre-class period statements could only be relevant if they provide a context

2    under which class period statements were affirmatively misleading when made. *See In Re Merck*

3    *& Co., Inc. Secs. Litig.*, 432 F.3d 261, 271 (3rd Cir. 2005) (noting that, although pre-class period

4    statements can be relevant evidence, a defendant cannot be liable for such statements); *Brody*,

5    280 F.3d at 1006 ("To be actionable under the securities laws, an omission must be misleading;

6    in other words it must *affirmatively create* an impression of a state of affairs that differs in a

7    material way from the one that actually exists.") (emphasis added). Even limited in this way,

8    however, Plaintiff's theory still fails. This is because FoxHollow's pre-class statements were far

9    too general to create a clear impression that the company intended to retain specific employees,

10   such as Thomas, Martin or Hoffman, for the long term. In fact, FoxHollow explicitly warned

11   investors that employment at FoxHollow was at will and that the company might not be able to

12   retain key employees. *See* November 1, 2005 Form 10-Q at 30 (Blizzard Decl. Ex. D) (stating

13   that FoxHollow employees may leave at any time); May 13 2005, Form 10-Q at 25 (Blizzard

14   Decl. Ex. B) (same); April 29, 2005 Proxy Statement at 22 (Blizzard Decl. Ex. C) ("Employment

15   at our company is at will.").

16        As he did in the Consolidated Complaint, Plaintiff places considerable emphasis on

17   FoxHollow's statement of "Factors Affecting Future Operating Results," contained in the

18   company's Form 10-Q filed May 13, 2005. *See* First Am. Compl. ¶ 52. But the risk disclosure

19   statement upon which Plaintiff relies would not reasonably lead anyone to conclude that

20   FoxHollow intended to retain management. Indeed, the statement conveys exactly the opposite

21   message—that FoxHollow's management is subject to change, that personnel may be replaced,

22   and that investors should be aware of that possibility. *See id.* ("Any of our officers and other key

23   employees may terminate their employment at any time" and "[f]ailure to attract and retain

24   personnel … would harm our ability to compete effectively and grown [sic] our business.").

25        The two earnings calls from the pre-class period also provide no support to Plaintiff's

26   case. *See id.* ¶¶ 51, 61. In these calls, Thomas made some remarks praising FoxHollow's

27   workforce and noted that the company was adding new employees. *See id.* These vague and

28   highly general statements did not mention any employee by name. *Id.* ¶ 51 (Thomas stated that

11

404972.03

1  FoxHollow has a "team that is executing on every level imaginable"). No rational investor

2  would ever conclude from these statements that FoxHollow intended to retain Thomas, Martin

3  and Hoffman for the long term. It is well established that general statements of optimism, such

4  as those identified in paragraphs 51 and 61, are not actionable. *See In re Gupta Corp. Secs.*

5  *Litig.*, 900 F. Supp. 1217, 1236 (N.D. Cal. 1994); *In re VeriFone Secs. Litig.*, 784 F. Supp. 1471,

6  1481 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (9th Cir. 1993). These statements are exactly the kind

7  of "vague . . . run-of-the-mill corporate optimism on which no reasonable investor would rely."

8  *In re Copper Mountain Secs. Litig.*, 311 F. Supp. 2d 857, 869 (N.D. Cal. 2004).[5]

9       Although Plaintiff misidentifies the date on which it was filed, the First Amended

10  Complaint places new emphasis on FoxHollow's April 29, 2005 Proxy Statement. *Compare*

11  First Am. Compl. ¶¶ 53-56 *with* Consolidated Compl. ¶ 47. FoxHollow's Proxy Statement

12  outlined an "overall executive compensation philosophy" to "attract and retain executives who

13  are critical to FoxHollow's long-term success." First Am. Compl. ¶ 54. This "compensation

14  philosophy" is a statement of FoxHollow's general policy. Contrary to Plaintiff's claim, it is not

15  a clear statement to investors that FoxHollow intended to retain any particular employee for the

16  long term. Indeed, although Plaintiff does not cite this passage, the Proxy Statement clearly

17  notes that "Employment at our company is at will." *See* April 29, 2005 Proxy Statement at 22

18  (Blizzard Decl. Ex. C).

19

---

20       [5] Even if the highly general statements of praise and satisfaction identified in paragraphs
   51 and 61 *were* the kind of forward-looking statement upon which an investor might rely, the
21  statements were accompanied by a "safe harbor" statement. At the beginning of each call,
   FoxHollow's Vice President of Business Development and Investor Relations said the call would
22  include forward looking statements and referred listeners to the risk factors listed in
   FoxHollow's most recent Form 10-Q. *See* Blizzard Decl. Exs. F & G. In each relevant Form 10-
23  Q, FoxHollow acknowledged that it might "not be able to meet our future hiring needs or retain
   existing personnel" and that "[t]he announcement of the loss of one of our key employees could
24  negatively affect our stock price" *See* Blizzard Decl. Ex. B.
        Under the PSLRA's safe harbor provision, forward-looking statements are not actionable
25  as a matter of law if they are identified as such and accompanied by "meaningful cautionary
   statements identifying important factors that could cause actual results to differ materially from
26  those in the forward looking statement." See 15 U.S.C. § 77z-2; 15 U.S.C. § 78u-5. *See also*
   *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999). This provides an alternative ground
27  for rejecting any claim based on the statements made during the earnings calls of April 27 and
   July 27, 2005.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1    Plaintiff places a similar undue emphasis on the Proxy Statement's discussion of stock

2    options. Although the Proxy Statement refers to certain options as "long-term compensation,"

3    this was not an indicator that FoxHollow intended to retain Thomas, Martin and Hoffman for the

4    long term. First, the Proxy Statement describes stock options as "*potential* long-term

5    compensation." *See* April 29, 2005 Proxy Statement at 14 ( Blizzard Decl. Ex. C) (emphasis

6    added). This is hardly a guarantee that the employees will actually be at FoxHollow for the long

7    term.

8    Second, FoxHollow was *required by law* to report stock options as "long term

9    compensation." The SEC requires executive compensation disclosures in proxy statements. *See*

10   17 C.F.R. § 229.402 (2005); *see also* Executive Compensation Disclosure, 57 Fed. Reg. 48126

11   (Oct. 21, 1992). Moreover, SEC regulations required FoxHollow to disclose this information in

12   the *form* it did. *See* 17 C.F.R. § 229.402 (a)(9)(b) (2005). As of April 29, 2005, the law required

13   that certain kinds of options be labeled "Long Term Compensation." *Id.* In September 2006, the

14   SEC removed the requirement that such compensation be labeled as "Long Term

15   Compensation." *See* Executive Compensation and Related Person Disclosure, 71 Fed. Reg.

16   53158 (Sep. 8, 2006) ("To simplify the Summary Compensation Table and eliminate confusing

17   distinctions between items currently reported as 'Annual' and 'Long Term' compensation, we

18   have moved into this column all items formerly reportable as "Other Annual Compensation.").

19   In 2005, however, FoxHollow was bound by law to provide the Summary Compensation Table

20   in the form found in the Proxy Statement and to report stock options as long term compensation.

21   Given these legal requirements, it is unreasonable to conclude that FoxHollow's compensation

22   disclosures gave "a clear indicator to the public market that Fox Hollow wanted to retain

23   Thomas, Martin and Hoffman for a long term." First Am. Compl. ¶ 56.

24   Plaintiff's reliance on these statements is a forlorn attempt to shoehorn his case into the

25   framework of *New Jersey v. Sprint Corp.*, Case No. 03-2071-JWL, 2004 U.S. Dist. LEXIS

26   17765 (D. Kan. Sept. 3, 2004). The key difference between *Sprint* and this case is that, in *Sprint*,

27   the company *actually said* that it intended to "insure" the "long-term employment" of specific

28   executives. *Id.* at *12. Specifically, Sprint stated in SEC filings that it had "entered into new

13

404972.03

1   employment contracts with Mr. Esrey and Mr. LeMay . . . *designed to insure their long term*

2   *employment* with Sprint." *Id.* at *12-13 (emphasis added).  The court held that "Sprint's

3   statement that the contracts were 'designed to insure' the long-term employment of Mssrs. Esrey

4   and LeMay could reasonably have led an investor to conclude that the termination of Mssrs.

5   Esrey's and LeMay's employment . . . was simply not an option from Sprint's perspective,"

6   while the specific allegations of the complaint supported the inference that at the time of Sprint's

7   statement, "defendants knew that Mssrs. Esrey's and LeMay's ability to continue to lead Sprint

8   was in jeopardy." *Id.* at *25, 30-31.  Looking to the dictionary definition of "insure," the Court

9   relied heavily on the fact that Sprint had explicitly said that the contract would "insure" the long-

10  term employment of Esrey and LeMay. *See id.* at *30-31 (citing Webster's Third New

11  International Dictionary 1173 (1986)).  In this case, FoxHollow never stated that it intended to

12  "insure" the long-term employment of Thomas, Martin and Hoffman; to the contrary, it

13  repeatedly said that they were at-will employees.  Plaintiff's suggestions otherwise are merely a

14  hopeful gloss on unexceptional compensation disclosures that were required by law.

15          Plaintiff has identified no statements that created a duty to disclose Simpson's "edict" to

16  management.  It is unremarkable for a company to make general statements praising its

17  workforce and noting the importance of its employees to its performance.  Similarly, prior to

18  2006, all companies were required to report stock options as long term compensation.  It would

19  place an enormous burden on publicly held corporations if such statements gave rise to a duty to

20  disclose that a particular employee might depart the company.  The Court analyzed the situation

21  correctly when it concluded that, under Plaintiff's theory, "every publicly held corporation would

22  have to disclose when they are going to fire somebody before they fire somebody." Tr. 15:12-

23  15.  Rather than impose this unnecessary and new burden on all publicly held corporations, the

24  Court must dismiss Plaintiff's complaint.

25          **2.      Plaintiff Identifies No Actionable Statements or Omissions.**

26          Plaintiff must identify actionable statements or omissions that are both within the class

27  period and prior to Plaintiff's stock purchase.  Plaintiff has defined a class period of August 28,

28  2005 to January 26, 2006, and Defendants can only be liable for statements made during that

14

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1   period.  *See In re Clearly Canadian Secs. Litig.*, 875 F.Supp. 1410, 1420 (N.D. Cal. 1995)

2   (noting that "[a]s the class period defines the time during which defendants' fraud was allegedly

3   alive in the market, statements made . . . before or after the purported class period" are not

4   actionable).  Further, as Defendants noted in their prior motion to dismiss, Plaintiff cannot rely

5   on statements made *after* he last purchased FoxHollow stock.  Lead Plaintiff Roberts's last

6   purchase during the class period was December 6, 2005.  *See* Pl.'s Certification, attached as Ex.

7   3 to Decl. of Seth A. Safier in Supp. of Mot. for Consolidation (Docket No. 7).  It is well-settled

8   that statements made after the named plaintiffs' last stock purchase cannot be an independent

9   basis for a securities claim.  *See Klein v. Gen. Nutrition Cos., Inc.*, 186 F.3d 338, 345 (3d Cir.

10  1999) ("[P]ost-purchase statements cannot be a basis for liability"); *In re American Bus. Fin.*

11  *Servs., Inc. Secs. Litig.*, 413 F. Supp.2d 378, 393 (E.D. Pa. 2005) ("[P]laintiffs must therefore

12  allege valid claims for securities fraud based on statements made by defendants before they

13  themselves purchased their ABFS stock.").  Accordingly, only statements made after August 28,

14  2005 and before December 6, 2005 are actionable in this case.

15      Plaintiff identifies only three public statements made during the relevant period.  *See* First

16  Am. Compl. ¶¶ 75-77.  The statements were a Form 8-K filed October 26, 2005, an earnings

17  conference call that day and a November 1, 2005 Form 10-Q.  The First Amended Complaint

18  does not specifically identify any of these statements as misleading and, indeed, none were

19  misleading.

20      The Form 8-K filed October 26, 2005 announced financial results for the third quarter of

21  fiscal year 2005.  Plaintiff does not allege that these results were inaccurate.  Rather, Plaintiff

22  alleges that the 8-K "did not mention Simpson's decision to terminate FoxHollow's executive

23  management who failed to authorize the Lumend acquisition." *Id.* ¶ 75.  For the reasons

24  explained above, FoxHollow did not have a duty to report Simpson's alleged "edict."

25  Accordingly, this omission did not make the 8-K misleading.  The 8-K simply reported financial

26  results.  Plaintiff provides no reason to suppose the 8-K was affirmatively misleading.

27      In the earnings conference call of October 26, 2005, FoxHollow "reported successes

28  outlined in its 8-K" while Thomas thanked "all the members of the FoxHollow team for their

15

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1   efforts and result" and said that "[w]e couldn't be happier." First Am. Compl. ¶ 76.[6]  These

2   remarks are exactly the kind of "vague . . . run-of-the-mill corporate optimism on which no

3   reasonable investor would rely." *In re Copper Mountain*, 311 F. Supp. 2d at 869.  This praise for

4   "the FoxHollow team" did not mention any employee by name.  It would be absurd to assume

5   that a reasonable investor might conclude, on the basis of a brief remark such as "[w]e couldn't

6   be happier," that FoxHollow intended to retain specific employees, such as Thomas, Martin and

7   Hoffman, for the long term.  Accordingly, the earnings conference call of October 26, 2005 was

8   not affirmatively misleading for failing to disclose Simpson's alleged "edict" to management.[7]

9          The final public statement alleged within the relevant period is a Form 10-Q filed on

10  November 1, 2005.  Plaintiff presents no allegations about why this statement was misleading.

11  *See* First Am. Compl. ¶ 77 (noting only that "FoxHollow reported its financial results for the

12  third quarter, including quarterly revenues").  This means that the Court must dismiss any claim

13  based on this statement. *See Falkowski*, 309 F.3d at 1133 (plaintiff must allege why statements

14  are misleading).  Moreover, the Form 10-Q was not misleading for omitting information about

15  Simpson's "edict" to management.  In fact, the November 1, 2005 Form 10-Q, noted that "Any

16  of our officers and other key employees may terminate their employment at any time" and "[w]e

17  may not be able to meet our future hiring needs or retain existing personnel." *See* November 1,

18  2005 Form 10-Q at 30 (Blizzard Decl., Ex. D).

19         Plaintiff also identifies some statements made after Thomas' departure from FoxHollow.

20  These statements add nothing new to remarks that were already identified in the dismissed

21  Consolidated Complaint. *Compare* First Amend. Compl. ¶¶ 84, 92 with Cons. Compl. ¶ 62, 66.

22  Moreover, as noted above, Plaintiff cannot rely on such statements because they were made *after*

23  he last purchased FoxHollow stock.  The Court should disregard such statements.[8]

24  _____

25  [6] These remarks are the only newly alleged public statements in the First Amended Complaint
    that fall within the relevant time period between August 28 and December 6, 2005.

26  [7] Even if the highly general statements of praise and satisfaction identified in ¶ 76 *were* the kind
    of statement upon which an investor might rely, the statements were accompanied by a "safe
27  harbor" statement.  This provides an alternative ground for rejecting any claim based on the
    statements made during the earnings call of October 26, 2005. *See note 5 supra.*

28  [8] Although the Court need not consider post-December 6, 2005 statements, Plaintiff did not plead

16

404972.03

1    Plaintiff has identified no actionable statements.  Plaintiff has conceded that he cannot

2    identify false statements and is relying on omissions.  Tr. 10:1-13.  Yet FoxHollow had no duty

3    to disclose Simpson's alleged "edict" to management and none of Defendants' statements were

4    misleading for failing to disclose this "edict."  As Plaintiff has not identified any misleading

5    statements, the First Amended Complaint must be dismissed.

6    **B.      The  First Amended Complaint Still Does Not State a Securities Cause of Action.**

7         In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977), the Supreme Court made it

8    clear that allegations of corporate mismanagement are not actionable under the federal securities

9    laws.  Plaintiff's new allegations based on the testimony of anonymous 'executive employee

10   witnesses' amount to nothing more than allegations of internal discord.  *See* First Am. Compl.

11   ¶¶ 67-71.  Accordingly, these new allegations do not help Plaintiff plead a securities claim

12   because "[f]ederal securities law was not intended to provide a federal forum for every

13   intracorporate squabble … [and] does not authorize and its goals are not furthered by the scrutiny

14   of the background of every factional struggle among directors or shareholders."  *Taylor v. First*

15   *Union Corp. of South Carolina, See* 857 F.2d 240, 246 (4th Cir. 1988).   In fact, now that

16   Plaintiff has removed his false allegation that the Lumend deal was designed solely to benefit

17   Simpson, it is even clearer that his complaint alleges nothing more than an internal management

18   dispute.

19        Once again, Plaintiff tries to dress up allegations of mismanagement and intracorporate

20   disputes as a securities case by alleging that Defendants failed to disclose them.  This tactic

21

22   particularized facts showing that these statements were misleading in any event.  Plaintiff claims
     that the statements were misleading because they did not reveal that Simpson fired Thomas.
23   First Am. Compl. ¶ 81.  But Plaintiff never alleges particularized facts showing that Thomas *was*
     fired.  The Court already gave Plaintiff notice of this problem.  *See* Tr. 4:10-22.  The Court noted
24   that Plaintiffs' had failed to explain how Simpson had the power to fire executives on his own.
     Tr. 4:15-17 ("I don't imagine he could have fired all the top executives of the company.")
25   Despite being on notice regarding this hole in its complaint, Plaintiff does not allege
     particularized facts explaining how Simpson, as Chairman of the Board, was able to fire Thomas.
26   *See* First Am. Compl. ¶ 81.  Similarly, Plaintiff never explains how and when Thomas was fired.
     This is fatal to his theory as the PSLRA requires Plaintiff to "explain[] the who, what, where,
27   when with respect to … falsity."  *Rubke v. Capitol Bancorp*, No. C 05-4800 PJH, 2006 WL
     1699569, *18 (N.D.Cal. June 16, 2006) (Hamilton, J.).
28

17

404972.03

1  cannot succeed. Where "the central thrust of a claim ... arises from acts of corporate

2  mismanagement, the claims are not cognizable under federal law" even though Plaintiff couches

3  the claim in terms of a "failure to disclose." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 289

4  (7th Cir. 1981); *see also Naye v. Boyd*, No. C83-771R, 1986 WL 198, *3 (W.D. Wash. Oct. 20,

5  1986) ("[A]llegations that a defendant failed to disclose mismanagement are not sufficient to

6  state a cause of action for securities fraud."). In short, Plaintiff is not permitted to "bootstrap"

7  his way into a securities claim by alleging a failure to disclose such internal disputes. *Panter*,

8  646 F.2d at 288. The First Amended Complaint attempts just this sort of bootstrapping and must

9  be dismissed.

10  　　　*Weill v. Dominion Res., Inc.*, 875 F. Supp. 331, 337 (E.D. Va. 1994) is directly

11  analogous. In *Weill*, the plaintiffs alleged that Dominion Resources, an energy holding

12  company, and Thomas Capps, its President and CEO, failed to disclose material facts regarding

13  its principal subsidiary, Virginia Power. *Id.* at 334. Among the material facts that plaintiffs

14  alleged should have been disclosed were that "Capps had suggested that Bill Stewart be replaced

15  as head of Virginia Power's nuclear program" and that "Capps had made inappropriate and

16  critical remarks about Virginia Power officers to other officers." *Id.* The court found that

17  "Plaintiffs have ... attempted to circumvent *Santa Fe* by arguing Dominion's failure to disclose

18  mismanagement constitutes a claim under the federal securities laws" and dismissed the

19  complaint because it "concern[ed] nothing more than mere internal management disputes." *Id.* at

20  337. As the First Amended Complaint now makes clear, the dispute over Lumend was simply a

21  disagreement about Lumend's technology and whether the deal would interfere with

22  FoxHollow's ongoing sales efforts. *See* First Am. Compl. ¶¶ 9, 65-66. Accordingly, Plaintiff's

23  claim that Defendants were obligated to disclose Simpson's internal threat that Thomas might be

24  fired over this disagreement concerns nothing more than an internal management dispute.

25  Plaintiff cannot circumvent *Santa Fe* in this manner. *Weill*, 875 F. Supp. at 337.

26  **C.    The First Amended Complaint Still Does Not Adequately Plead Scienter.**

27  　　　The First Amended Complaint fails to meet the heightened standard for pleading the

28  required state of mind under the PSLRA. To survive dismissal, Plaintiff must "state with

18

404972.03

1  particularity facts giving rise to a *strong inference*" that Defendants acted with deliberate or

2  conscious recklessness with respect to the accuracy of the allegedly misleading statements. 15

3  U.S.C. § 78u-4(b)(2) (emphasis added). As the Supreme Court recently explained, the

4  "inference of scienter must be more than merely 'reasonable' or 'permissible'--it must be cogent

5  and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a

6  reasonable person would deem the inference of scienter cogent and at least as compelling as any

7  opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues &*

8  *Rights, Ltd.*, _ U.S. _, 127 S.Ct. 2499, 2510 (2007). "In the Ninth Circuit, the required state of

9  mind is 'deliberate or conscious recklessness.'" *Rubke*, 2006 WL 1699569 at *6 (quoting *In re*

10 *Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999)). The Complaint "must

11 state specific facts indicating no less than a degree of recklessness that strongly suggests actual

12 intent." *In re Silicon Graphics*, 183 F.3d at 979. The Complaint fails to meet this standard.

13       **1.       The Factual Allegations in the First Amended Complaint are Inadequate.**

14       The falsity and scienter requirements of the PSLRA have generally been incorporated

15 into a single inquiry. *Rubke*, 2006 WL 1699569 at *6. Just as Plaintiffs must state with

16 particularity specific facts demonstrating material misstatements, so too must Plaintiff "explain[]

17 the who, what, where, when with respect to ... scienter." *Id.* at *18. Courts "must consider the

18 complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

19 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by

20 reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*, 127 S.Ct. at

21 2509. Moreover, "in determining whether the pleaded facts give rise to a 'strong' inference of

22 scienter, the court must take into account plausible opposing inferences." *Id.* For the reasons

23 discussed above, the First Amended Complaint fails to allege particular facts that demonstrate

24 that Defendants made any statements that were misleading at the time they were made.

25 Accordingly, the Court should find that the First Amended Complaint fails to "strongly suggest[]

26 actual intent" to make misleading statements on the part of Defendants. *Silicon Graphics*, 183

27 F.3d 979.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1    The First Amended Complaint adds no new allegations creating an inference of scienter.

2    Remarkably, Plaintiff pleads the exact same boilerplate "Additional Scienter Allegations" as

3    before. *Compare* First Am. Compl. ¶¶ 103-05 with Cons. Compl. ¶¶ 76-78. These allegations

4    remain inadequate. *See, e.g.*, *In re Netflix, Inc. Secs. Litig.*, No. C 04-2978 FMS, 2005 WL

5    1562858, at *8 (N.D. Cal. June 28, 2005) (holding that "general allegations of defendants'

6    positions within a company, … or access to internal reports do not give rise to a strong inference

7    of scienter . . . [s]imilarly, merely alleging 'motive and opportunity' is inadequate.")

8    Plaintiff's new allegations regarding purported statements by three anonymous

9    "Executive Employee Witnesses" also do not raise an inference of scienter. These statements

10   describe isolated instances of management disharmony and provide no evidence that Defendants

11   intentionally made misleading statements or omissions. *See* First Am. Compl. ¶¶ 68-71; 78-79.

12   Moreover, even if these allegations were relevant, they would still be insufficient to raise a

13   strong inference. Allegations relying on information provided by unidentified "witnesses" must

14   identify each person's job duties and responsibilities, and provide corroborating information

15   sufficient "to support a reasonable conviction in the informant's basis of knowledge" and "how

16   [each informant] came to learn of the information attributed to him or her." *In re Northpoint*

17   *Communications Group, Inc. Secs. Litig.*, 221 F. Supp. 2d 1090, 1097 (N.D. Cal. 2002). The

18   First Amended Complaint does not even come close. Plaintiff omits all identifying information

19   regarding his confidential sources. This alone renders these allegations legally insufficient. *See*

20   *In re Business Objects S.A. Secs. Litig.*, 2005 WL 1787860, at *6 (N. D. Cal., July 27, 2005)

21   ("[T]he Amended Complaint has failed to describe the confidential witnesses with a sufficient

22   degree of specificity …[because it] provides no more than the job title of the confidential

23   witnesses."); *In re Northpoint Communications Group, Inc. Secs. Litig.*, 184 F. Supp. 2d 991,

24   1000 (N.D. Cal. 2001) (same).

25   Plaintiff has failed to plead facts raising a strong inference of scienter. In fact, Plaintiff

26   has failed even to plead particular facts supporting his version of events. At the hearing on

27   September 6, 2007, the Court placed Plaintiff on notice that he had not pleaded facts showing

28   how Simpson was able to fire Thomas or even that Thomas was fired. Tr. 4:9-21. Plaintiff now

20

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C-06-4595-PJH

404972.03

1   alleges, without support, that Simpson "had the power to issue and enforce his threat" to fire

2   Thomas. *Id.* ¶ 73. Yet, other than by repeating this bald allegation, Plaintiff has not pleaded

3   with any particularity *how* Simpson, as Chairman of the Board, was able to fire Thomas on his

4   own. *See id.* ¶ 81.[9] Plaintiff simply notes that Simpson "selected every member of FoxHollow's

5   Board of Directors." *Id.* ¶ 73. Standing alone, this does not come close to creating an inference

6   that Simpson controlled the Board or that the Board acted improperly. *See generally Beam v.*

7   *Stewart*, 845 A.2d 1040, 1050 (Del. 2004).

8        Similarly, Plaintiff provides no support for his allegation that the alleged refusal of

9   Martin (COO), Hoffman (VP Sales) and Trigg (VP Marketing) to "sign off" on the Lumend

10  transaction had any effect on the proposed merger. First Am. Compl. ¶¶ 12; 74. Plaintiff pleads

11  no facts suggesting that the Lumend transaction (a corporate merger) depended on the consent of

12  any of these executives, none of whom were on the Board. Plaintiff does not allege that these

13  executives made presentations to the Board regarding Lumend or played any role whatsoever in

14  approving the acquisition of Lumend. As Plaintiff has failed to plead particular facts raising a

15  strong inference of scienter, or even particular facts supporting his version of events, the First

16  Amended Complaint must be dismissed.[10]

17      **2.    The Court Should Infer a Lack of Scienter from the Fact that Defendants
            Retained the Vast Majority of their FoxHollow Shares During the Class**

18      **Period.**

19      The Supreme Court has recently affirmed that, "in determining whether the pleaded facts

20  give rise to a 'strong' inference of scienter, the court must take into account plausible opposing

---

[9] Far from creating a strong inference, Plaintiff's allegations are internally inconsistent. Recall
that, according to Plaintiff, Simpson told Thomas on August 28, 2005, that if the Lumend
transaction was not closed "*by the end of the week*" he would ask for his resignation and
Simpson had the power to carry out this threat. First Am. Compl. ¶ 73 (emphasis added). Of
course, the transaction was *not* closed within the week and, even according to Plaintiff, Thomas
was not asked to resign at that time. In fact, Lumend was sold to another party in September
2005 and Thomas continued to serve as CEO for months afterward. *See id.* ¶ 74.

[10] As Plaintiff has failed to state a claim under section 10(b), he has "no basis upon which to
premise a Section 20(a) claim." *In re Copper Mountain*, 311 F Supp. 2d at 883. To establish
such liability, Plaintiff must first demonstrate a "primary" violation under section 10(b). *Id.*
"[I]n the absence of a viable claim under Section 10(b), any remaining Section 20(a) claims must
be dismissed." *Id.* Accordingly, the Court should also grant Defendants' motion to dismiss

---

21

404972.03

1   inferences." *Tellabs*, 27 S.Ct. at 2509; *see also Rubke*, 2006 WL 1699569 at *6 (holding that the

2   Court "must consider all reasonable inferences to be drawn from the allegations, including

3   inferences unfavorable to the plaintiffs") (internal quotation omitted).  Moreover, courts must

4   consider matters of which a court may take judicial notice, such as SEC filings, when conducting

5   this inquiry.  *See id.*; *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1116 n.7 (N.D.

6   Cal. 2003) (taking notice of percentages of total holdings sold by insiders based on the Forms 4

7   and other SEC filings from which they were calculated).

8          Accordingly, the Court should dismiss the Complaint for a second, independent reason.

9   The Court should infer from Simpson's minimal stock sales during the class period that he

10  lacked the intent that Plaintiff ascribes to him.  *See In re Copper Mountain*, 311 F. Supp. 2d at

11  875 (the fact that the CEO of the company "retained the majority of his holdings tends to negate

12  … an inference" of scienter ); *Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1166 (S.D. Cal. 2003)

13  ("Defendants *retained* 62% of their holdings.  This undermines Plaintiffs' allegation that

14  Defendants were quietly trying to unload their JNI stock.").

15         The facts here strongly support an inference that Defendants did not think that any

16  material information was being withheld.  Simpson sold only 5% of his FoxHollow shares during

17  the class period.  *See* Blizzard Decl. Exs. M & N.  If, as Plaintiff would have it, Defendants

18  engaged in a fraud on the market, one would expect to see substantially greater sales during the

19  period that FoxHollow's shares were allegedly overvalued.  Instead, Simpson held on to 95% of

20  his shares during this time.  This undisputed fact strongly supports an inference that Simpson

21  believed that all material facts had been disclosed and had no reason to believe the company's

22  shares were overvalued.  Based upon all of the foregoing, the Court should conclude that the

23  First Amended Complaint fails to allege scienter as required by the PSLRA.

24

**D.     The First Amended Complaint Must Be Dismissed With Prejudice Because Any
25      Further Amendments Would Be Futile.**

26         The Court put Plaintiff on notice regarding the defects with the Consolidated Complaint.

27  Nevertheless, he has failed to produce an amended complaint that is adequate on either scienter

28  ─────────────────────────────────────────────

plaintiffs' section 20(a) claim.

404972.03

1    or falsity.  It is clear that any further amendments would be futile.  Accordingly, the Court should

2    dismiss the Complaint with prejudice.  *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.*

3    *Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (futile amendments should not be permitted);

4    *Silicon Graphics*, 183 F.3d at 991 (denying leave to amend because defects in pleadings could

5    not be cured by amendment).

6                                    **IV.    CONCLUSION**

7             For the foregoing reasons, the Court should dismiss the First Amended Complaint.

8

9

10

11   Dated:  November 19, 2007                          KEKER & VAN NEST

12

13

                                            By:   /s/ Paula L. Blizzard
14                                                PAULA L. BLIZZARD
                                                  Attorneys for Defendants
15                                                FOXHOLLOW TECHNOLOGIES, INC.
                                                  and JOHN B. SIMPSON
16

17

18

19

20

21

22

23

24

25

26

27

28

404972.03